GORDON SILVER
THOMAS E. LITTLER, ESQ./SBN006917
E-mail: tlittler@gordonsilver.com
40 North Central Avenue, Suite 2100
Phoenix, Arizona 85004
Telephone (602) 256-0400
Facsimile (602) 256-0345
Attorney for Plaintiff Phoenix Benefits, Inc.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>CHRISTIAN BRUCE WESTERMAN and<br>JODIE LYNN WESTERMAN,<br><br>Debtors. | CASE NO.: 2:09-bk-26407-SSC<br><br>CHAPTER 13 |
| PHOENIX BENEFITS, INC., an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIAN BRUCE WESTERMAN and<br>JODIE LYNN WESTERMAN,<br><br>Defendants. | ADVERSARY NO.: 2:10-ap-00206-SSC<br><br>**PHOENIX BENEFITS' MOTION TO DISMISS OR CONVERT TO CHAPTER 7** |

Creditor Phoenix Benefits, Inc. ("Phoenix Benefits"), by and through its counsel, requests that this Court dismiss, or in the alternative convert the case to Chapter 7, Debtors Christian and Jodie Westerman's ("Debtors") Chapter 13 bankruptcy case on the grounds and for the reasons that:

(1) Debtor is ineligible under Chapter 13 since Debtors noncontingent, liquidated, unsecured debt exceeds the statutory limit provided in 11 U.S.C. § 109(e);

(2) Debtor's Chapter 13 bankruptcy was filed in bad faith; and

Gordon Silver
Attorneys At Law
Suite 2100
40 North Central Avenue
Phoenix, Arizona 85004
(602) 256-0400

102419-001/1058112.doc

1 of 9

CASE NO.:_____

(3) Debtor did not timely submit evidence pursuant to the Trustee's Recommendation, including evidence as to why the case should not be dismissed or converted to Chapter 11 or Chapter 7 because there are claims exceeding the statutory amount.

This Motion is supported by the accompanying memorandum of points and authorities which is incorporated herein by reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Factual Background.

Debtor Christian Westerman ("Westerman") was employed by Phoenix Benefits from March, 2007 until February, 2009. During this time, Westerman was subject to numerous employment agreements, including a Confidentiality Agreement, Non-Solicitation Agreement, and a Covenant Not to Compete (collectively, the "Agreements").[1] (Exhibit 1.) During his employment and right after his discharge, Westerman breached the Agreements by, among other things, stealing Phoenix Benefits' clients for his own personal benefit, using Phoenix Benefits confidential information to solicit and steal Phoenix Benefits' prospective and current clients, working full-time for another employer while employed full time with Phoenix Benefits, and managing competing and personal businesses simultaneously to his employed with Phoenix Benefits.

On June 3, 2009, after Westerman's termination of employment from Phoenix Benefits, Phoenix Benefits filed a complaint against him in the Superior Court of

---

[1] Westerman testified that he did not recall executing these contracts. The evidence will be overwhelmingly probative that he did execute the contracts.

Gordon Silver
Attorneys At Law
Suite 2100
40 North Central Avenue
Phoenix, Arizona 85004
(602) 256-0400

102419-001/1058112.doc

CASE NO.:_____

Maricopa County (Docket No. CV2009-017755) alleging breach of contract, breach of good faith and fair dealing, tortuous interference with business relations, slander, libel, business disparagement, violation of Arizona's Uniform Trade Secrets Act, and unjust enrichment. Phoenix Benefits requested general damages, punitive damages, liquidated damages, lost profits, pecuniary loss, and attorneys' fees and costs. Westerman filed an Answer, Counterclaim and Third-Party Complaint and Phoenix Benefits' Answered the Counterclaim and Replied to the Third-Party Complaint.

On November 4, 2009, during the pendency of the state court action, Debtors filed this Chapter 13 proceeding. Ignoring the claims for damages made in the ongoing litigation and in the contracts, Debtors listed only $131,410.68 in unsecured debt and $53,528.00 in secured debt on their sworn schedules. In Debtors' Statement of Financial Affairs, they scheduled a lawsuit pending against Westerman by Phoenix Benefits in Maricopa County Superior Court. However, Debtors failed to list Phoenix Benefits as a creditor and did not include any amount of debt owing to Phoenix Benefits. Phoenix Benefits later filed a proof of claim in the Chapter 13 case and listed a claim in the amount of $706,884.16. Debtors did not file an objection to this claim.

Debtors' petition has other inconsistencies other than failing to schedule creditors. In their Statement of Financial Affairs, Debtors list all of their income for the years 2007, 2008, and 2009 as "Self-Employment Income". Not only did Westerman have two other jobs that were not self-employment during this time period but in his Chapter 13 Statement of Current Monthly Income, he lists all of his income under gross wages, salary, tips, bonuses, overtime and commissions and lists zero dollars under income from

Gordon Silver
Attorneys At Law
Suite 2100
40 North Central Avenue
Phoenix, Arizona 85004
(602) 256-0400

102419-001/1058112.doc

CASE NO.:_____

the operation of a business, profession or farm.

Phoenix Benefits filed a Non-Dischargeability Complaint on February 1, 2010 in this Court. (Docket No. 2:09-ap-00206-SSC.) Debtors filed a Motion for Summary Judgment (Docket No. 16.) and on October 19, 2010, after oral argument, this Court denied Debtors' Motion for Summary Judgment. (Docket No. 63.)

On September 22, 2010, Russell Brown, the Chapter 13 Trustee, filed the "Trustee's Recommendation". Among other things, the Trustee identified that the "Court's claims docket show $805,877.49 in unsecured claims, an amount which exceeds the limits imposed by 11 U.S.C. § 109(e). The Trustee required evidence as to why this case should not be dismissed or converted to Chapter 11 or 7." (Docket No. 25, ¶ 3.) The Trustee in his Recommendation stated that Debtors must provide the information and documents by October 22, 2010 or he would lodge an order dismissing the case. Undersigned has been informed that as of October 26, 2010, the Trustee has not received anything from Debtors as requested.

II.  **Legal Argument.**

A court may convert a Chapter 13 case to Chapter 7 or may dismiss a Chapter 13 case, "whichever is in the best interests of the creditors and the estate, for cause." 11 U.S.C. § 1307(c); *In re Goeb*, 675 F.2d 1386 (9th Cir. 1982). Section 1307(c) includes a non-exhaustive list of eleven circumstances that constitute "cause" for dismissal and the 9th Circuit has held that a Chapter 13 petition filed in bad faith may be cause for dismissal under § 1307(c). *In re Eisen*, 14 F.3d at 470; *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999).

Gordon Silver
Attorneys At Law
Suite 2100
40 North Central Avenue
Phoenix, Arizona 85004
(602) 256-0400

102419-001/1058112.doc

CASE NO.:_____

**A. Debtors are ineligible for Chapter 13 bankruptcy because their noncontingent, liquidated, unsecured debt exceed the limit in § 109(e).**

Debtors filed this Chapter 13 bankruptcy claiming, under oath, that they had only $131,410.68 in unsecured debt. Debtors did this despite a lawsuit alleging ten counts and substantial damages pending against them in state court. Debtors, apparently to fit within the limits of a Chapter 13, ignored their obligations to Phoenix Benefits.

The 9th Circuit BAP has emphasized the importance of Debtors' honesty in their schedules:

> Bankruptcy schedules are supposed to be over-inclusive. Every potential creditor should be listed in order to have notice of the bankruptcy and an opportunity to protect itself. If listing a debt that is more theoretical than real would defeat chapter 13 eligibility, then we will have created a powerful disincentive to the accurate, complete and candid schedules that are vital to a bankruptcy system, which relies of self-reporting. *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 875 (9th Cir. BAP 2002).

Debtors, by ignoring claims in ongoing litigation, failed to be "over-inclusive" in their schedules when they failed to schedule Phoenix Benefits as a creditor because the claim would have made him ineligible for Chapter 13 bankruptcy. There is no doubt that Phoenix Benefits' claim was one that was required to be listed in the schedules.

11 U.S.C. § 109(e) provides:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650 . . . may be a debtor under Chapter 13 of this title.

A claim is liquidated if it is subject to "ready determination and precision in computation of the amount due." *In re Slack*, 187 F.3d 1070, 1073-74 (9th Cir. 1999); *In re Sylvester*, 19 B.R. 671, 673 (9th Cir. BAP 1982). Bankruptcy courts in the 9th Circuit have held that "disputes regarding liability arising out of contract and tort claims do not

Gordon Silver
Attorneys At Law
Suite 2100
40 North Central Avenue
Phoenix, Arizona 85004
(602) 256-0400

102419-001/1058112.doc

CASE NO.:_____

render a debt unliquidated." *In re Slack*, 187 F.3d at 1074; *see In re Sylvester*, 19 B.R. at 673 (contract claim is easily ascertainable and therefore, debt is liquidated even though liability is disputed). "The definition of 'ready determination' turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability." *In re Wenberg*, 902 F.2d 768 (9th Cir. 1990); *cf. In re Slack*, 187 F.3d at 1075 (holding that "a debt is liquidated if the amount is readily ascertainable, notwithstanding the fact that the question of liability has not been finally decided.").

Here, Debtors, aware of the state court claims against them and even though they deny liability, should have listed Phoenix Benefits' claims on their schedules. Yet, even though they signed the schedules under oath, they failed to list Phoenix Benefits as a creditor and failed to list a debt to Phoenix Benefits in his schedules. Debtors only listed unsecured claims in the amount of $131,410.68, ignoring a claim of $706,864.16. The total amount of Phoenix Benefits' claims was based on damages of $406,864.16 based on revenue from Phoenix Benefits' clients that Westerman stole and a contract provision providing that the client list could be purchased for two times the amount; $200,000 based on a liquidated damages claims included in a Covenant Not to Compete agreement[2]; and $100,000 for tort damages. Debtors never objected to this claim.

The amount of the contract claims were readily determinable by simply reviewing the documentation and contracts and would not require an extensive hearing to calculate

---

[2] The Covenant Not to Compete provided "the employee also acknowledged that the actual damages resulting from a breach of Covenant Not to Compete will be difficult or impossible to ascertain and the Employee agrees to pay the Employer, as liquidated damages and not as penalty, an amount equal to One Thousand Dollars ($1,000) for each day during which a violation of the Covenant Not to Compete continues up to maximum liquidated damages of Two Hundred Thousand Dollars ($200,000)."

Gordon Silver
Attorneys At Law
Suite 2100
40 North Central Avenue
Phoenix, Arizona 85004
(602) 256-0400

102419-001/1058112.doc

CASE NO.:

the amount of the claims. Therefore, those claims, like most contract claims, constituted liquidated debts. Because the contract claims total over $600,000, the Debtors total unsecured debt is $738,274.84 and Debtors are ineligible under Chapter 13. Thus, Debtors' Chapter 13 case should be dismissed for ineligibility under § 109(e).

**B.     The Chapter 13 petition was filed in bad faith and therefore, the case should be dismissed pursuant to § 1307(c).**

Debtors failed to schedule all of the unsecured creditors that had claims against them in their petition and therefore, the Court should dismiss, or in the alternative convert to a Chapter 7, Debtors' case on grounds of bad faith pursuant to § 1307(c).

"To determine if a petition has been filed in bad faith courts are guided by the standards used to evaluate whether a plan has been proposed in bad faith" under 11 U.S.C. § 1325(a)(3). *Id.* A bankruptcy court reviews the totality of the circumstances when determining whether bad faith exists. *In re Leavitt*, 171 F.3d at 1224. The factors considered are: (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed the Chapter 13 petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor's only purpose in filing for chapter 13 protection is to defeat state court litigation; and (4) whether egregious behavior is present. *Id.* Bad faith does not require a debtor's fraudulent intent and a case may be dismissed with prejudice. *Id.*

Debtors misrepresented facts in their petition when they failed to list Phoenix Benefits as a creditor and to include its claims in the petition. It is reasonable to infer that Debtors did not list Phoenix Benefits' claims because it would have made them ineligible and prohibited them from filing a Chapter 13 case and knowing the nature of Phoenix

Gordon Silver
Attorneys At Law
Suite 2100
40 North Central Avenue
Phoenix, Arizona 85004
(602) 256-0400

102419-001/1058112.doc

CASE NO.:_____

Benefits' claims would prohibit him from getting a so-called "super discharge". In addition, in their schedules Debtors also misrepresented Westerman's employment and wages when they listed his income from the previous three years as income from self-employment and then listed zero dollars as wages earned from a business.

Debtors may have also filed for Chapter 13 protection to evade two pending state court proceedings against them, including Phoenix Benefits' action, because they knew that a Chapter 13 could discharge those liabilities. Incorporating Phoenix Benefits' Objection to Confirmation of the Plan, Phoenix Benefits requests that this Court dismiss, or convert to Chapter 7, Debtors' Chapter 13 case for filing their petition in bad faith.

### C. Debtors' Chapter 13 case should be dismissed because they failed to provide evidence required by the Trustee's Recommendation.

Lastly, Phoenix Benefits requests that this Court dismiss Debtors' Chapter 13 case as suggested by the Trustee for failure to provide the requested evidence. The Trustee's Recommendation provided that "the Court may dismiss the case without further notice for the Debtors' failure to timely comply with the Trustee's Recommendation." Debtors had 30 days to provide the necessary information to the Trustee. Debtors failed to do so. Therefore, Debtors' Chapter 13 case should be dismissed.

### III. Conclusion.

Phoenix Benefits requests that this Court dismiss, or in the alternative convert the case to Chapter 7, Debtors' Chapter 13 bankruptcy case because (1) Debtors are ineligible under Chapter 13 since Debtors' noncontingent, liquidated, unsecured debt exceed the statutory limit provided in § 109(e); (2) Debtors' Chapter 13 petition was filed in bad faith; and (3) Debtors did not timely submit evidence pursuant to the Trustee's

Gordon Silver
Attorneys At Law
Suite 2100
40 North Central Avenue
Phoenix, Arizona 85004
(602) 256-0400

102419-001/1058112.doc

8 of 9

CASE NO.:_____

Recommendation, including evidence as to why the case should not be dismissed or convert to Chapter 7 because there are claims exceeding the statutory amount.

RESPECTFULLY SUBMITTED this 3rd day of November, 2010.

GORDON SILVER

Thomas E. Littler
40 North Central Avenue, Suite 2100
Phoenix, Arizona 85004
(602) 256-0400

COPIES of the foregoing mailed
This 3rd day of November, 2010 to:

Office of the United States Trustee
230 North First Avenue, Ste. 204
Phoenix, Arizona 85003

Antonio M. Rosacci, Esq.
Victoria A. Bellomo, Esq.
The Rosacci Law Firm, PC
3411 N. 32nd Street
Phoenix, AZ 85018
Attorneys for Defendants

By: Jamie Ruiz

Gordon Silver
Attorneys At Law
Suite 2100
40 North Central Avenue
Phoenix, Arizona 85004
(602) 256-0400

102419-001/1058112.doc

CASE NO.:_____

**EXHIBIT 1**

# CONFIDENTIALITY AGREEMENT, NON-SOLICITATION AGREEMENT AND COVENANT NOT TO COMPETE

This CONFIDENTIALITY AGREEMENT, NON-SOLICITATION AGREEMENT AND COVENANT NOT TO COMPETE (the "Agreement") is made this 1st day of March, 2007 and between Chris Westerman hereinafter referred to as "Employee") and PHOENIX BENEFITS, INC., a corporation incorporated under the laws of the State of Arizona (hereinafter referred to as "Employer").

## BACKGROUND OF AGREEMENT

WHEREAS, Employee is desirous of being employed by Employer which markets a variety of health insurance and life insurance products and services (the "Products and Services"); and

WHEREAS, Employer is desirous of employing Employee in a position relating to marketing of the Products and Services for the exclusive benefit of Employer; and

WHEREAS, Employee expressly acknowledges and agrees that (i) Employer has developed and established a valuable and extensive business relating to marketing of the Products and Services, (ii) the Employer's past and present clientele and customers, as well as active prospective clients, have been established and maintained at great expense and represent a valuable asset and a substantial part of the Employer's business goodwill; (iii) by virtue of Employee's employment with Employer, Employee will have access to, confidential and proprietary information of Employer concerning, among other things, the Employer's clientele and customers, active prospective clients, referral services, marketing strategies and methods of operation; and (iv) by virtue of such employment, Employee will become personally familiar with the Employer's clientele and customers and active prospective clients; Employee acknowledges that the nature of the Employer's business is such that Employee will interface with clientele and customers; and

WHEREAS, Employee acknowledges and agrees that Employer has a reasonable, necessary and legitimate business interest in protecting the Employer's confidential information and assets, as well as the ongoing business and goodwill of the Employer; and

WHEREAS, Employee acknowledges and agrees that the terms and conditions set forth below are reasonable and necessary in

"I have read and understand this page _CW_(initials)"

Exhibit 2

order to protect the legitimate business interests of the Employer.

NOW THEREFORE, in consideration of the covenants and promises of this Agreement regarding Employee's employment and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Employee agrees as follows:

1. **Best Efforts**. Employee agrees to devote the Employee's full business time and best efforts in Employee's position relating to the Employer's marketing of the Products and Services, and in the performance of the Employee's general duties as required by the Employer. Therefore, during the term of this Agreement, Employee agrees that the Employee will not perform any activities or services or accept such other employment which would be inconsistent with this Agreement, the employment relationship between the parties, or would in any way interfere with or present a conflict of interest concerning Employee's employment with Employer.

2. **Confidential Information**.

A. Employee acknowledges and agrees that in the course of employment with Employer, Employee will have access to certain confidential information owned by the Employer (hereinafter such information is referred to as "Confidential Information") including, but not limited to, Confidential Information relating to:

> (i) the past and present clientele and customers of the Employer as well as the persons, firms and corporations who are active prospective clients for the Products and Services;
>
> (ii) markets or companies from which the Employer obtains the Products and Services;
>
> (iii) the types of Products and Services which the Employer provides and the internal corporate policies related thereto;
>
> (iv) the Products and Services purchased by or for the clientele and customers of Employer;

"I have read and understand this page _CW_ (initials)"

Exhibit 2

(v) operations manuals, prospecting manuals and guidelines, sales aids, industry specific research and manuals, pricing policies and related information, marketing manuals and marketing plans of the Employer;

(vi) business strategies, techniques and methodologies of the Employer;

(vii) financial information of the Employer otherwise not available to the public, including information set forth in internal records, files, ledgers or incorporated in profit and loss statements and fiscal reports;

(viii) all inventions, discoveries, devices, algorithms, computer hardware and computer software (including any source code, object code, documentation, diagrams, flow charts, know how, methods or techniques associated with the development or use of the foregoing computer software) of the Employer; and

(ix) all correspondence, memoranda and other office records, including employee records, of the Employer.

B. During the term of this Agreement and for a period of two (2) years following termination of Employee's employment hereunder, Employee will not disseminate, disclose, communicate, publish, or otherwise divulge, directly or indirectly, any Confidential Information, except (i) in the course of the performance of authorized duties on behalf of and for the benefit of Employer and only as necessary to perform such duties, (ii) with the prior written consent of Employer, or (iii) as required by law. Employee agrees to use the Confidential Information solely in furtherance of the business of Employer and not to use such Confidential Information in connection with any other business or personal activity.

C. Both parties acknowledge and agree that this restriction is not intended to prohibit Employee from using the skills or business acumen which the Employee acquires while

"I have read and understand this page _CW_ (initials)"

Exhibit 2

employed by Employer, but rather to protect the Confidential Information in a fair and equitable manner and to recognize that such Confidential Information represents a valuable asset necessary to the continued growth, success and existence of Employer.

D. Upon termination of employment with Employer for any reason, Employee agrees to return to Employer immediately all Confidential Information which is in, or subsequently comes into, the Employee's possession.

3. Non-Solicitation.

A. For a period of two (2) years after the date of termination of the Employee's employment with the Employer for any reason, Employee agrees that Employee will not call upon, contact, solicit or accept, prospect or sell to, directly or indirectly, actively or passively:

> (i) any client, customer or active prospective client of Employer as of the date of termination of this Agreement, for the purpose of attempting to market the Products and Services, or

> (ii) any client, customer or active prospective client of the Employer to whom Employee provided any services, either alone or with others, during the term of the Employee's employment with Employer, for the purpose of attempting to market Products and Services.

B. The Employee agrees that for a period of two (2) years after the Employee's relationship with the Employer has been terminated or otherwise ended, whether at the instance of the Employer or the Employee, that the Employee shall not, directly or indirectly, solicit any employees of the Employer to work for Employee or any other competitive company.

C. The parties expressly acknowledge and agree that the purpose of Paragraph 3 is not to prohibit Employee from engaging in the business of marketing of the Products and Services, but to

"I have read and understand this page _CW_(initials)"

Exhibit 2

protect the legitimate business interests of Employer in a reasonable and least restrictive manner.

4.   Proprietary Materials.  In consideration of the salary, wages and other benefits received by Employee and as a condition of, and as consideration for, the employment or continued employment of Employee, Employee hereby assigns and transfers to Employer, and agrees that Employer shall be the sole owner of all inventions, discoveries, devices, algorithms, computer hardware and computer software (including any source code, object code, documentation, diagrams, flow charts, know how, methods or techniques associated with the development or use of the foregoing computer software) heretofore or hereafter conceived, developed or made by Employee, either alone or with others, in whole or in part during Employee's employment by Employer, which relate to, or are conceived, developed or made in the course of, Employee's employment or which are developed or made from, or by reason of knowledge gained from, such employment (said intellectual properties hereinafter referred to as the "Proprietary Materials").  Employer shall have the right to use all Proprietary Materials, in any manner whatsoever, and Employee acknowledges that all of such Proprietary Materials shall be considered as "work made for hire", belonging to the Employer.

   Employee hereby agrees to disclose promptly and in writing to the CEO of Employer, or any other officer or representative designated in writing by Employer, all Proprietary Materials conceived or developed by Employee alone or with others during Employee's employment to which Employer is entitled as above provided, and Employee further agrees not to disclose such Proprietary Materials to others, except as required by the Employee's employment, without the express consent of the Employer.  Employee further agrees that during the Employee's employment by Employer and at any time thereafter, the Employee will, upon the request of Employer, execute proper assignments to Employer of any and all such Proprietary Materials to which Employer is entitled as above provided, and will execute all papers and perform all other lawful acts which Employer may deem necessary or advisable for the procurement and maintenance of trademark, copyright and/or patent applications and trademarks, copyrights and/or patents of the United States of America and foreign countries for such Proprietary Materials to which Employer is entitled as above provided, and will execute any and all proper documents as shall be required or necessary to vest

"I have read and understand this page ___(initials)"

Exhibit 2

8. Non-Waiver. The waiver by Employer of any breach by Employee of any provision of this Agreement shall not operate or be construed as a waiver of Employer's rights upon any subsequent breach. The waiver by Employee of any breach by Employer of any provision of this Agreement shall not operate or be construed as a waiver of Employee's rights upon any subsequent breach.

9. Successors and Assigns. The rights and obligations of Employer under this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of Employer.

10. Recitals and Captions. The recitals set forth in the preamble of this Agreement shall be deemed to be included and form an integral part of this Agreement. The captions and headings used in this Agreement are for convenience of reference only and shall not affect the construction or interpretation of this Agreement or any of the provisions hereof.

11. References. All references herein to the singular shall include the plural as the case may require. All references herein to the masculine gender shall be construed as references to the feminine gender as the case may require.

12. Remedies Cumulative. All rights and remedies conferred upon the parties hereto by this Agreement or by law, in equity or otherwise, shall be cumulative of each other, and neither the exercise nor the partial exercise nor the failure to exercise any such right or remedy shall preclude the later exercise of such right or remedy or the exercise of any other right or remedy.

13. Amendment or Modification. No amendment or modification of this Agreement or of any covenant, condition or limitation herein contained, shall be valid unless evidenced by a writing duly executed by Employee and an authorized representative of Employer. No evidence of any amendment or modification shall be offered or received in evidence in any proceeding between the parties hereto arising out of or affecting this Agreement or the rights or obligations of any party hereunder, unless such amendment or modification is in writing, duly executed by the both parties and expressly refers to this Agreement. It is further agreed that the provisions of this Paragraph 13 may not be waived.

"I have read and understand this page _____(initials)"

Exhibit 2

title in Employer to such Proprietary Materials and all trademark, copyright, and patent applications and trademarks, copyrights and patents pertaining thereto. It is understood that all expenses in connection with such trademarks, copyrights, and patents and all applications related thereto shall be borne by Employer, but Employer shall be under no obligation to protect by trademark, copyright, patent, or otherwise any such Proprietary Materials, except at its own discretion and to such extent as Employer shall deem desirable. Employee shall not be entitled to any additional compensation, other than the Employee's regular salary or wages, for any services rendered by Employee as herein provided during the term of the Employee's employment.

5. Covenant Not to Compete.

A. The Employee agrees that for a period of six (6) months after the Employee's relationship with the Employer has been terminated or otherwise ended, whether at the instance of the Employer or the Employee, that the Employee shall not engage in the business of marketing of the Products and Services in the Territories. The Employee agrees that the six (6) month period referred to above shall be extended by the number of days included in any period of time during which the Employee is or was engaged in activities constituting a breach of this Paragraph 5.

B. The Employee agrees and acknowledges that this Covenant Not to Compete is necessary for the success of this employment relationship between the Employees and the Employer because of the nature of the business of marketing of the Products and Services. Further, the Employee acknowledges that, in the event of his breach of this Covenant Not to Compete, money damages (including the liquidated damages called for below) will not sufficiently compensate the Employer for its injury caused thereby, and the Employee accordingly agrees that in addition to such liquidated or other money damages, the Employee may be restrained and enjoined from any continuing breach of this Covenant Not to Compete without any bond or other security being required by the court. The Employee acknowledges that any breach of this Covenant Not to Compete would result in irreparable damages to the Employer. The Employee also acknowledges that the actual damages resulting from a breach of Covenant Not to Compete will be difficult or impossible to ascertain and the Employee agrees to pay the Employer, as liquidated damages and not as

"I have read and understand this page _CW_ (initials)"

Exhibit 2

penalty, an amount equal to One Thousand Dollars ($1,000) for each day during which a violation of the Covenant Not to Compete continues up to maximum liquidated damages of Two Hundred Thousand Dollars ($200,000). The Employee acknowledges that said amount is fair and reasonable and in fact is far less than the damages that the Employer is likely to suffer from such a breach. Said liquidated damages are in addition to, and not in lieu of, the Employer's right to an injunction.

C. The Employee expressly agrees and acknowledges that this Covenant Not to Compete is reasonable as to time and geographical area and does not place any unreasonable burden upon him. The Employee agrees that this Covenant Not to Compete is severable and shall survive the termination of the employment relationship between the Employee and the Employer.

D. The Employee agrees that the general public will not be harmed as a result of enforcement of this Covenant Not to Compete.

E. The Employee acknowledges that he has requested or has had to opportunity to request that this personal legal counsel review this Covenant Not to Compete.

6. <u>Territories</u>. For purposes of this Agreement, Territories shall refer to the Counties of Maricopa, Coconino and Greenlee, State of Arizona. However, in the event that a court determines that this definition of Territories is overly broad, then Territories shall refer to all locations within a twelve (12) mile radius of the Employer's primary office located at 1440 E. Missouri #100, Phoenix, Arizona or such other location as the Employer utilizes as the Employer's primary office.

7. <u>Injunctive Remedies</u>. Employee acknowledges and agrees that monetary damages will not be an adequate remedy for a breach by Employee of any of the provisions in Paragraphs 2 through 5 and that irreparable injury will result to Employer, and its businesses and property, in the event of such a breach. Accordingly, Employee acknowledges that Employer may, in addition to recovering legal damages, including lost commissions, fees and revenues, proceed in equity to enjoin Employee from violating any of the provisions noted.

"I have read and understand this page _CW_ (initials)"

Exhibit 2

14. <u>Governing Law</u>. This Agreement shall be governed by, interpreted, and construed in accordance with the laws of the State of Arizona.

15. <u>Severability</u>. If any term or provision of this Agreement, or the application thereof to any person or circumstance, shall be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, or the application of any such term or provision to persons or circumstances other than those as to which it is determined to be invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

PHOENIX BENEFITS, INC., an
Arizona corporation

BY: _/s/ Karen Jenkins_
Its: _CEO_

"Employer"

_/s/ [signature]_

"Employee

Reaffirmed: _3/1_/2007

"I have read and understand this page _CW_ (initials)"

Exhibit 2